Argued and submitted June 11, affirmed in part, reversed in part and remanded October 24, reconsideration denied December 7, 1984, petition for review denied January 15, 1985 (298 Or 553)

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Respondent,*

*v.*

## BERG,
*Appellant.*

(16-82-05225; CA A30414)

689 P2d 959

Paul D. Clayton, Eugene, argued the cause for appellant. With him on the briefs was John L. Luvaas and Thomas M. Christ, and Luvaas, Cobb, Richards & Fraser, Eugene.

William G. Wheatley, Eugene, argued the cause for respondent. With him on the brief was Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff State Farm Mutual Automobile Insurance Company (State Farm) brought this proceeding for a declaratory judgment, seeking a declaration that the personal injury protection (PIP) coverage of its policy issued to defendant Miller does not afford benefits to defendant Berg or, if Berg is entitled to such benefits, plaintiff's obligation should be up to the limits of that coverage for only one accident, and any liability coverage benefits available to Berg under that policy should be reduced by any amount paid to her as personal injury protection benefits. Berg's answer asserted that she was covered under the personal injury protection provisions of the policy for each of two contacts with the Miller vehicle.[1] In a counterclaim, she sought punitive damages and damages for emotional distress caused by alleged outrageous conduct of State Farm in its response to her claim. On State Farm's motion, the trial court dismissed Berg's outrageous conduct claim and, after trial on stipulated facts, declared that the policy afforded no PIP benefits to Berg and declined to reach the extent of coverage issues because they were moot. Berg assigns error to the trial court's declaration that she was not entitled to PIP benefits and to its dismissal of her counterclaim. We affirm in part, reverse in part and remand.

We summarize the stipulated facts: Berg was driving a vehicle southbound on Interstate Highway 5 when her vehicle collided head-on with a vehicle being operated northbound in the southbound lanes of the freeway. Berg was thrown from her vehicle by the impact and landed somewhere in the southbound lanes. A truck driver who witnessed the collision saw Berg try to lift her head and right arm but otherwise remain stationary. He then saw the Miller vehicle approach the accident scene, swerve, skid sideways, strike Berg and drag her a distance before stopping with her under a portion of it. The truck driver told Miller, "Get off of her," and Miller drove her car forward and over Berg. Miller felt a "thump" while her car was skidding, and a second "thump" while driving forward in compliance with the truck driver's directive.

---

[1] Defendant Miller did not file an answer or make any other appearance, and State Farm was granted a default judgment against her.

The parties further stipulated that State Farm's insurance policy issued to Miller provided PIP coverage with a $25,000 per accident limit, and liability coverage with a similar limitation. They also agreed that, if Berg is entitled under that policy to the benefits of the PIP coverage for one accident, she is entitled to recover $25,000 under that coverage but that, if she is entitled to such benefits for two accidents, she is entitled to recover $50,000.

The trial court found that "Defendant Leslie M. Berg while lying upon the highway was struck by the vehicle of Defendant Suzanne K. Miller and thereafter struck again by the vehicle." It made the following declaration and conclusions of law:

"1. Defendant Leslie M. Berg was at the time of each contact between her and the vehicle of Defendant Miller "occupying" her own vehicle within the definition of the automobile insurance policy of Plaintiff, and therefore was not a "pedestrian" as defined therein and was not an insured under Plaintiff's policy;

"2. The personal injury protection coverage of the insurance policy issued by Plaintiff to Defendant Suzanne K. Miller, which was in effect at the time of the contacts of said vehicle with Defendant Leslie M. Berg affords no personal injury protection benefits to Defendant Leslie M. Berg;

"3. Since the first and second declarations and conclusions of law relieve Plaintiff from paying any personal injury protection benefits to Defendant Leslie M. Berg, the remaining declarations sought by Plaintiff's complaint as to the effect of such payment upon liability coverage of Plaintiff's policy are rendered moot and should be dismissed * * *."

Defendant Berg is entitled to PIP coverage under the policy issued by plaintiff to defendant Miller only if Berg was a "pedestrian" at the time she was struck by the Miller vehicle. Berg specifies error in the trial court's ruling that she was not a "pedestrian" for purposes of coverage under the PIP provisions of the policy and therefore not an insured entitled to PIP benefits. The pertinent provisions of the policy read:

"PERSONAL INJURY PROTECTION - COVERAGE P

"* * * * *

"We will pay in accordance with the *Personal Injury Protection Act* for *bodily injury* to an *insured* caused by

accident resulting from the maintenance or use of a *motor vehicle:*

"1.   Medical Expenses. * * *

"* * * * *

"Definitions

"*Insured* — means:

"1.   *you* or any *relative;* and

"2.   any other *person* who suffers *bodily injury* while *occupying* or through being struck as a pedestrian by *your* car or a *newly acquired* car * * *.

"* * * * *

"*Personal Injury Protection Act*—means sections 743.800 through 743.835 of the Oregon Insurance Code and any amendments.

"*Pedestrian*—means a *person* while not *occupying* a self-propelled vehicle." (Emphasis in original.)

The definition of "pedestrian" in the policy is identical to that in ORS 743.800(7)(d). The term "occupying" is not defined in the policy, but the parties agree that the applicable definition is that of ORS 743.800(7)(c):

" 'Occupying' means in, or upon, or entering into or alighting from."

The limited relevant question for our determination is whether, under the facts of this case, Berg was "occupying" her vehicle in that she was "alighting from" it at the time she was struck by Miller's car, and thus was not a "pedestrian" entitled to PIP benefits as an insured under the provisions of State Farm's policy issued to Miller.

No Oregon cases have considered the definition of "occupying" or "pedestrian" within the context of insurance policies and ORS 743.800. The parties, however, have cited us to a number of decisions from other jurisdictions construing similar or identical provisions. *See, e.g., United States Fidelity & Guaranty Company v. Daly,* 384 So2d 1350 (Fla App 1980); *Industrial Fire and Casualty Ins. Co. v. Collier,* 334 So2d 148 (Fla App 1976); *Stoddard v. "AID" Insurance Co. (Mutual),* 97 Id 508, 547 P2d 1113 (1976); *Nelson v. Iowa Mutual Insurance Company,* 515 P2d 362 (Mont 1973); *Kantola v. State Farm Ins.,* 62 Ohio Misc 11, 405 NE2d 744 (1979).

We find those decisions which focus on the words "alighting from" most noteworthy. In *Stoddard v. "AID" Insurance Co. (Mutual), supra,* the insured, a paraplegic, had parked his car in a garage and begun to get out of it by hoisting himself into a wheelchair when he noted leaking gasoline; he traveled toward the rear of the car by grasping it and pulling himself along, inspected the gas tank cover, and then noticed flames. He was burned while leaving the garage. In determining whether the insured was covered under a policy provision that defined "occupying" as "in or upon or entering into or alighting from," the court held that he was "occupying" the car in terms of "alighting from" it because he had not completed all acts that could reasonably be expected from those in similar situations, nor all acts which would normally be performed in leaving the car, and he had not embarked upon an entirely distinct course of conduct. (He had not taken his packages with him and had not closed the car door.) 97 Id at 511. *Kantola v. State Farm Insurance, supra,* was an action to recover for injuries sustained by a child who was struck by a motor vehicle while crossing the road after getting off a school bus. The issue before the court was whether the child was "occupying" the bus when injured; the policies of insurance defined "occupying" to include "alighting from." The court held that "alighting from" a school bus included reaching a place of safety, because that is a course of conduct reasonably incidental to leaving and alighting from a school bus, which was statutorily required to remain stopped as a protective measure until the child reached such a place. 62 Ohio Misc at 13.

The import of these cases appears to be that a person remains an "occupant" of a vehicle until the person has completed all acts reasonably expected to be performed under the circumstances or reasonably incidental to the disembarking process and commences a new course of conduct. State Farm urges us to apply that criterion to the facts of this case and to conclude that Berg was "occupying" her own vehicle at the time its policyholder, Miller, struck Berg. State Farm argues that, because Berg was struck by Miller's vehicle shortly after being thrown from her own vehicle, remained immobile close to her vehicle, and neither had reached nor sought a place of safety and had not embarked on a different course of conduct, she was still in the process of "alighting

from" her own vehicle and, therefore, was not a "pedestrian" within the terms of the policy.

■■ Our analysis of the situation, however, dictates a contrary conclusion. Following her involuntary ejection from her vehicle, Berg landed in a traffic lane where, except for attempting to lift her head and right arm, she remained stationary. From the time she landed on the highway until the time she was struck by Miller's vehicle, she was apparently not ambulatory. In our opinion, those facts permit no other conclusion but that Berg at that point had completed all acts that a person in her circumstances reasonably would be expected to have done. She had gone as far as she was going to go in leaving her vehicle; in fact, as far as she could go. She was not "alighting" from the vehicle; she had "alighted." That she then did not seek a place of safety or embark on a different course of conduct is not dispositive; she was unable to do so. We find that Berg completed the "alighting" process upon coming to rest on the pavement. From then on she no longer was "occupying" her vehicle and her status necessarily was that of a pedestrian within the policy and statutory definitions.[2] The trial court erred in concluding that she was, as a matter of law, "occupying" her vehicle.

Based on its conclusion that Berg was not a pedestrian, the trial court held that the policy of insurance issued by State Farm to Miller afforded Berg no PIP benefits; although it found that she was struck twice by the Miller vehicle, it did not decide whether one accident or two accidents had occurred for the purpose of determining the limits of PIP coverage. It also held that the remaining declarations sought by State Farm as to the effect of PIP payments on the liability coverage of the policy were moot, but our decision today revives those questions. Accordingly, we remand for the trial court's determination of those issues.

As a second assignment of error, Berg contends that

---

[2] As a necessary concomitant of our decision, any injuries that Berg incurred upon ejection as a result of her body coming into contact with the surface of the roadway, as opposed to those resulting from contact with the Miller vehicle, occurred while she was "occupying" her own vehicle. *See United States Fidelity and Guaranty Company v. Daly, supra.* Although we realize this distinction could present problems of proof of causation of the various injuries of a person in Berg's predicament, the parties' stipulation eliminates any such issue in this case.

the trial court erred in granting State Farm's motion to dismiss her counterclaim for damages for emotional distress on the basis that it failed to state a claim for relief. *See* ORCP 21A(8). As a preliminary matter, Berg argues that the trial court should not have entertained State Farm's motion to dismiss her emotional distress counterclaim because the motion was not timely filed. The following sequence of events occurred: State Farm filed its declaratory judgment action; Berg filed her answer and her emotional distress counterclaim; State Farm moved to strike certain portions of that counterclaim, and the trial court denied the motion; State Farm then filed its reply to the counterclaim and, thereafter, its motion to dismiss the counterclaim for failure to state a claim. Berg refers to ORCP 21F, which provides, in relevant part:

"A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule, * * * but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subsection G.(3) of this rule on any of the grounds there stated. * * *"

ORCP 21G(3) further provides:

"A defense of failure to state ultimate facts constituting a claim * * * may be made in any pleading permitted or ordered under Rule 13 B. or by motion for judgment on the pleadings, or at the trial on the merits. * * *"

Berg's argument substantially is that, under the rules of civil procedure, the trial court should have denied the motion to dismiss because it was not consolidated with the motion to strike, and it could not be raised thereafter, except as provided in ORCP 21G(3).

Berg's argument has validity. A fundamental purpose of ORCP 21 is to curb the excessive use of motions for purposes of harassment and delay, and litigants should not be permitted to disregard its provisions with impunity. In the furtherance of judicial economy, however, we are reluctant to use ORCP 21F as the basis for reversal of the judgment. To do so would require a remand of this entire action, because all

claims then would not be adjudicated. *See* ORCP 67B. This is not a case in which State Farm has waived all right to raise the defense contained in the motion to dismiss by its failure to consolidate it with the motion to strike. If the trial court had denied the motion to dismiss, State Farm could have reasserted that defense by a motion for judgment on the pleadings or at trial under ORCP 21G(3). Although the trial court erred in entertaining the motion, reversal on that ground would only result in rehearing the identical issue at another time. Berg had full opportunity to argue the merits of the motion in the trial court, and allowing the motion to be made and heard separately from the motion to strike resulted in no prejudice to her inasmuch as plaintiff had not lost its right to raise the issue at a later time. We decline to reverse the judgment on that ground. *Accord Gaynor v. Metals Reserve Company,* 166 F2d 1011 (8th Cir 1948).

■ We turn then to the merits. The essence of Berg's counterclaim is that State Farm's refusal to pay PIP benefits made her unable to pay necessary medical expenses, which resulted in her being harassed for payment by the service providers which, in turn, caused her emotional distress and worry for which she seeks damages. Her allegations of outrageous conduct are predicated on the assertion that State Farm was acting in bad faith in refusing to acknowledge that she is a pedestrian under the PIP coverage of its policy. Those allegations are insufficient to state a cause of action. For the tort of outrageous conduct to be actionable, the plaintiff must allege facts showing conduct beyond the limits of social toleration. *Brewer v. Erwin,* 287 Or 435, 458, 600 P2d 398 (1979). A difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct. Until the present action, no Oregon decision construed the meaning of the terms "occupying" and "pedestrian" in the context of PIP coverage. That we have construed those terms differently from State Farm does not make its position one taken in bad faith. Its raising the policy exclusion to deny liability under the facts of this case suggests neither bad faith nor egregious conduct. *See Porter v. Utah Home Fire Insurance Co.,* 58 Or App 729, 738, 650 P2d 130 (1982). The trial court did not err in granting State Farm's motion to dismiss the claim for failure to state ultimate facts sufficient to constitute a claim.

The judgment of the trial court dismissing Berg's counterclaim for outrageous conduct is affirmed; its declaration that Berg was "occupying" her own car at the time she was struck by the Miller vehicle and, therefore, not a "pedestrian" insured under the PIP provisions of State Farm's policy of automobile insurance issued to Miller is reversed. The case is remanded for resolution of the remaining issues of extent of coverage.