YELVERTON, Judge,
dissenting.
The Court today is unable to answer the question it quotes from State Farm’s brief, but I can. The answer is: the child was “entering into” the school bus from the moment she left a place of safety on the shoulder of the highway and began to enter the bus under the protective mantle of its stopped position, its signals, and State law.
The relation between a school bus and a school child, when the bus stops to load or unload that child, is regulated by law. The letting in and letting out of the child is under the statutory control of the'bus driver from the time the child leaves or gets back to the safety of the shoulder of the road. This is what the Highway Regulatory Act means when it requires other drivers to stop not less than 30' from a school bus picking up or letting out children, and to stay stopped until all is clear. R.S. 32:80. This is the law’s attempt to lead the child by the hand.
The essence of determining coverage is whether the relationship between the person and the vehicle, in time and distance, on the facts of the given case, makes coverage more reasonable than not. Day v. Coca-Cola Bottling Co., Inc., 420 So.2d 518 (La.App. 2nd Cir.1982). On the facts of this case, considering the relationship between this child and the school bus, coverage is more reasonable than not.
Under the reasoning of the majority, had this little girl just stepped from the bus, having been handed down by the driver, and seconds later and two feet away she had been hit by a vehicle passing on the right, it would be found she was “alighting from” the bus and the UM coverage could be invoked. But because she was entering the bus, and seconds before and two, or *980 perhaps five or six, feet away she was hit, the majority says coverage has to be denied because the child had yet to make physical contact with the bus, and also because she had a good ways to walk to reach the door on the other side. Which side of the highway the school child lives on should not make that much difference. Nor should it make so much difference whether the accident happened in the morning, or in the afternoon, or whether the child was entering into, or alighting from the school bus.
Under the majority’s reasoning, the words “entering into”, as part of the definition of “occupy”, means nothing. These words are superfluous. If there has to be physical contact with the bus before there is an “entering into”, then the occupier is already “in or upon” the bus, and “entering into” does not mean anything. The majority recognizes that in the jurisprudence, Louisiana and elsewhere, “alighting from” means something more than “in or upon”, and that a physical contact is not required for coverage. As to “entering into”, however, the majority has fashioned an inconsistent definition; moreover, one so strict I can’t find its counterpart anywhere. The second to last paragraph of the majority’s opinion says that, not only is a physical contact necessary, but also “[bjefore Angie could have begun ‘entering into’ the bus, she would have had to ... enter the side door of the bus.” Facing this strict definition, the plaintiffs in this present case might as well have argued that Angie was “in or upon” the bus. The majority has simply written “entering into” out of the policy’s definition of “occupying.”
Summary judgment in this case should have been denied. There was a special relationship between this child and that vehicle. Angie was occupying the school bus. She was not “in” it, she was not “upon” it, and she was not “alighting from” it, but she was surely “entering into” it.
I admire the reasoning of the court in Kantola v. State Farm Ins., 62 Ohio Misc. 11, 405 N.E.2nd 744 (1979), which dealt with a nearly identical fact situation and identical policy language. The only factual difference was that the child had just left the bus at the time she was hit. The child had exited the school bus on the west side of the road and was struck by a motor vehicle while crossing the road toward the east side of the road. The Ohio court said:
“It is the court’s opinion that ‘alighting from’ a school bus means to reach a place of safety. In this case a pupil was exiting from a school bus and the act of exiting from the school bus continues until the pupil reaches a place of safety on the residence side of the road. The course of conduct of ‘alighting from’ a school bus includes reaching the side of the street of the pupil’s residence since it is a course of conduct reasonable [sic] incident to exiting and alighting from a school bus. Crossing the street to a position of safety, with the stopped school bus as a protective measure, is within the time framework, which could be reasonably expected.”
I can find no logical basis for reaching a different result just because the child is getting on the bus rather than getting off of it.
I respectfully dissent.